## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATHENA KOSTOPOULOS, on behalf of herself and all others similarly situated,<br><br>          Plaintiff(s),<br><br><br>          -against-<br><br>NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER and FRIEDMAN VARTOLO, LLP, and JOHN DOES 1-25<br><br>          Defendant(s). | Civil Case Number: _____<br><br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

## LOCAL CIVIL RULE 10.1 STATEMENT

1.    The mailing addresses of the parties to this action are:

ATHENA KOSTOPOULOS
155 Summit Drive
Paramus, New Jersey 07652

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER
8950 Cypress Water Blvd.
Coppell, Texas 75019

FRIEDMAN VARTOLO, LLP
1325 Franklin Avenue, Suite 160
Garden City, New York 11530

## PRELIMINARY STATEMENT

2.    Plaintiff on behalf of herself and all others similarly situated ("Plaintiff"), by and through her attorneys, alleges that Defendants, NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER ("NATIONSTAR"); FRIEDMAN VARTOLO, LLP ("FRIEDMAN") and JOHN DOES 1-25 their employees, agents and successors (collectively "Defendants") violated 15 U.S.C.

§ 1692 *et seq.*, the Fair Debt Collection Practices Act (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This is an action for violations of 15 U.S.C. § 1692 *et seq.*

4.      Venue is proper in this district under 28 U.S.C. §1391(b) and 15 U.S.C. § 1692k(d) because the acts of the Defendants that give rise to this action, occurred in substantial part, in this district.

## DEFINITIONS

5.      As used in this complaint, the terms "creditor," "consumer," "debt" and "debt collector" are defined at 15 U.S.C. § 1692a.

## PARTIES

6.      Plaintiff is a natural person, a resident of Bergen County, New Jersey and is a "Consumer" as defined by 15 U.S.C. § 1692a(3).

7.       NATIONSTAR maintains a location at 8950 Cypress Water Blvd., Coppell, Texas 75019.

8.       FRIEDMAN maintains a location at 1325 Franklin Avenue, Suite 160, Garden City, New York 11530

9.      NATIONSTAR uses the instrumentalities of interstate commerce or the mails to engage in the principal business of collecting debt and/or to regularly engage in the collection or attempt to collect debt asserted to be due or owed to another.

10.      NATIONSTAR uses the instrumentalities of interstate commerce or the mails to engage in the principal business of collecting debt.

11.     NATIONSTAR is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692(a)(6), and it uses litigation and non-litigation methods in its attempts to collect debts.

12.     FRIEDMAN uses the instrumentalities of interstate commerce or the mails to engage in the principal business of collecting debt and/or to regularly engage in the collection or attempt to collect debt asserted to be due or owed to another.

13.     FRIEDMAN uses the instrumentalities of interstate commerce or the mails to engage in the principal business of collecting debt.

14.     FRIEDMAN is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692(a)(6).

15.     John Does 1-25, are currently unknown Defendants whose identities will be obtained in discovery and at that time will be made parties to this action pursuant to the Federal Rules of Civil Procedure (hereinafter "FRCP"); Rule 15, Rule 20 and Rule 21. Plaintiff's claims against the currently unknown Defendants arise out of the same transaction, occurrence or series of transactions arising from known Defendant's actions and are due to common questions of law and fact whose joinder will promote litigation and judicial efficiency.

## CLASS ACTION ALLEGATIONS

16.     Plaintiff brings this action as a state-wide class action, pursuant to Rule 23 of the FRCP, on behalf of herself and all New Jersey consumers and their successors in interest (the "Class"), who Defendants collected or attempted to collect a debt from, in violation of the FDCPA, as described in this Complaint.

17.     This Action is properly maintained as a class action. The Class is initially defined as:

Class:

All New Jersey consumers who currently have or had a mortgage that Nationstar and/or Friedman foreclosed on or attempted to foreclose on, after Nationstar assigned its interest in the mortgage to another party.

The Class period begins one year to the filing of this Action.

The Class definition may be subsequently modified or refined.

18.    The Class satisfies all the requirements of Rule 23 of the FRCP for maintaining a class action:

a.    Numerosity: The Class is so numerous that joinder of all members is impracticable because there are hundreds and/or thousands of persons in New Jersey who Defendant(s) collected or attempted to collect a debt from, which violates specific provisions of the FDCPA.

b.    Commonality: There are questions of law and fact common to the class members, which predominate over questions affecting any individual Class member.    These common questions of law and fact include, without limitation:

i.    Whether the Defendants violated various provisions of the FDCPA as set forth herein:

ii.    Whether Plaintiff and the Class have been injured by the Defendants' conduct;

iii.    Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

iv.     Whether Plaintiff and the Class are entitled to declaratory relief.

c.  <u>Typicality:</u> Plaintiff's claims are typical of the Class, which all arise from the same operative facts and are based on the same legal theories.

d.  <u>Adequacy of Representation:</u> Plaintiff has no interest adverse or antagonistic to the interest of the other members of the Class. Plaintiff will fairly and adequately protect the interest of the Class and has retained experienced and competent attorneys to represent the Class.

19.     A Class Action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates no unusual difficulties in the management of this class action.

20.     A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.  Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as damages.

21.     Defendant(s) have acted on grounds generally applicable to the entire Class, thereby making appropriate final relief with respect to the Class as a whole.

## STATEMENT OF FACTS

22.     22.     Plaintiff, Athena Kostopoulos, is at all times to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

23.     On September 16, 2003, Plaintiff executed a promissory note for a residential mortgage loan from Lehman Brothers Bank FSB ("Lehman") in the amount of $564,000.

24.    Said promissory note and mortgage were for personal use.

25.    Said promissory note and mortgage were not for business purposes.

26.    The obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

27.    NATIONSTAR is a "debtor collector" as defined by 15 U.S.C. § 1692a(6).

28.    FRIEDMAN is a "debtor collector" as defined by 15 U.S.C. § 1692a(6).

29.    The principal purpose of FRIEDMAN is the collection of debts, which are in default.

30.    On November 28, 2003, Lehman Brothers Bank, FSB and its affiliates securitized the Kostopouloses' Note, Mortgage, Title Insurance Policy, and bundle of rights established thereby ("Mortgage Loan") into the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-35 ("Trust" or "SASCO 2003-35").

31.    Initially, CitiBank, N.A. was appointed as Trustee and Aurora Loan Services LLC ("Aurora") was designated both Master Servicer and Servicer for the Trust. On July 1, 2004, CitiBank, N.A. resigned and Wilmington Trust Company succeeded thereto. On that same date, July 1, 2004, Aurora transferred the day-to-day administration of the mortgage loans to CitiMortgage, Inc. ("CitiMortgage" or "Citi").

32.    In July 2006, the mortgage loan was declared in default.

33.    On December 21, 2010, MERS, as nominee for Lehman, assigned the mortgage to CitiMortgage as an administrative convenience for servicing purposes pursuant to 15 U.S.C. 1641(f) ("Assignment #1").[1]

---

[1] Over the life of the subject transaction, twelve (12) assignments of Plaintiff's Mortgage were filed for record with the Bergen County Clerk's Office; two (2) assignments were prepared, executed, and delivered to the assignee but were not recorded; and there exists a Mortgage Asset Purchase Agreement dated July 14, 2020, that transferred Plaintiff's Mortgage to a debt buyer that is not a matter of public record. Heretofore, the relevant assignments of mortgage are numbered for ease of reference.

34.     Effective as of July 2, 2012, Nationstar Mortgage LLC acquired all of the mortgage-servicing rights owned by Aurora Bank, FSB and its wholly owned subsidiary, Aurora Loan Services LLC. As of this date, Nationstar became the Master Servicer of the SASCO 2003-35, while CitiMortgage, Inc. continued to service Plaintiff's Mortgage Loan on a day-to-day basis.

35.     At the time NATIONSTAR succeeded Aurora as Master Servicer, said mortgage loan had been in a continuous state of default for the past six (6) years, primarily due to a dispute between the parties over certain mortgage servicing abuses.

36.     On February 28, 2014, Citi assigned the mortgage to Wilmington Trust Company as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2003-35 ("Wilmington Trust Company") because it was planning to institute a foreclosure action in the name of the real party in interest ("Assignment #2").

37.     On January 20, 2015, Katrina Mendoza, of Fein Such Kahn and Shepard, PC, filed a Complaint in Foreclosure on behalf of Wilmington Trust Company as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates 2003-35, Plaintiff, in the Superior Court of New Jersey Chancery Division – Bergen County, Docket No.: F-002238-15.

38.     On August 1, 2017, CitiMortgage, Inc. transferred the right to service Plaintiff's Mortgage Loan to Nationstar Mortgage, LLC.

39.     Three weeks later, on August 21, 2017, Tim Jackson, acting in his alleged capacity as Assistant Secretary of Nationstar Mortgage LLC as Attorney in Fact for Wilmington Trust Company as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-35 ("Assignor"), executed a Corporate Assignment of Mortgage which purports to transfer the Mortgage —***but not the note***— to Nationstar Mortgage LLC ("Assignee")

("Assignment #4"). Notwithstanding this Assignment, Wilmington Trust Company remained the owner of Plaintiff's Mortgage Loan.

40.    On October 2, 2017, notwithstanding Wilmington Trust remained the real party in interest, Nationstar Mortgage LLC d/b/a Mr. Cooper ("NATIONSTAR"), as servicer, filed a motion to substitute itself as the successor Plaintiff in the foreclosure action.

41.    On October 16, 2017, the Superior Court of New Jersey – Chancery Division – Bergen County, granted Wilmington Trust Company's motion to substitute NATIONSTAR into the state foreclosure action.

42.    On May 21, 2018, NATIONSTAR moved for final judgment.

43.    On June 22, 2018, the court granted final judgment in foreclosure to NATIONSTAR for $1,063,755.67, plus contract interest of 6% on $681,931.44, the principal sum in default, and lawful interest after said order.

44.    On or about November 25, 2019, Nationstar, in its capacity as Master Servicer of the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-35, dissolved the Trust and sold the remaining assets—including the Kostopouloses' Mortgage Loan—to U.S. Bank National Association, not in its individual capacity but solely as Trustee for NRZ Pass-Through Trust VIII.

45.    To memorialize this transfer, on March 5, 2020, Wilmington Trust Company, as Trustee of Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-35 executed an Assignment of Mortgage in favor of U.S. Bank National Association, not in its individual capacity but solely as Trustee for NRZ Pass-Through Trust VIII ("Assignment #6"). Assignment #6 was filed with the Bergen County Clerk's Office on March 10, 2020, at Book 3540, Page 619.

46.     On April 26, 2021, MTGLQ Investors, L.P., a subsidiary of Goldman Sachs ("MTGLQ"), sent Athena Kostopoulos a notice informing her that MTGLQ had acquired her Mortgage Loan effective March 30, 2021.[2] (*See,* <u>Exhibit A</u> – MTGLQ Notice, 04/26/2021)

47.     The Notice also stated that "Nationstar Mortgage LLC d/b/a Mr. Cooper is the servicer of your loan until 05/05/2021. **After this date, your new loan servicer will be Selene Finance LP**." (emphasis in original)

48.     ***Accordingly, as of May 5, 2021, NATIONSTAR's involvement with Plaintiff's Note, Mortgage, Mortgage Loan Account, Final Judgment of Foreclosure, and Property was extinguished. From this date forward, Nationstar no longer held any legal interest in or authority over Plaintiff's Mortgage Loan Account.***

49.     In March, May, and December of 2022, NATIONSTAR filed three (3) "corrective" or "gap" assignments of mortgage with the Bergen County Clerk's Office to fix certain breaks in the chain of title created by erroneous assignments of mortgage filed for record in 2014, 2017, and 2018. NATIONSTAR filed a fourth "Corrective Gap" assignment on January 23, 2023.

50.     To memorialize the antecedent sale described above, an Assignment of Mortgage from U.S. Bank National Association, not in its individual capacity but solely as Trustee for NRZ Pass-Through Trust VIII to MTGLQ Investors, L.P. ("Assignment #12") was filed for record with the Clerk's Office on March 21, 2023, as Instrument #2023020105.

51.     Immediately thereafter, on March 21, 2023, MTGLQ Investors, L.P. assigned its interest in the Mortgage to Wilmington Savings Fund Society, FSB, as Owner Trustee of the

---

[2] This transfer was not a matter of public record until March 21, 2023 when U.S. Bank National Association, not in its Individual Capacity but solely as Trustee for NRZ Pass-Through Trust VIII recorded an Assignment of Mortgage in favor of MTGLQ Investors, L.P. with the Bergen County Clerk's Office ("Assignment #12").

Residential Credit Opportunities Trust VI-A ("Assignment #14") which was filed with the Clerk's Office as Instrument #2023020107.

52.    Thus, between August 21, 2017, when Wilmington Trust Company assigned the Mortgage to NATIONSTAR, and June 6, 2024, when FRIEDMAN filed its application for a Pluries Writ of Execution, the following assignments—excluding corrective and gap assignments—were a matter of public record:

*Table 1 – Assignments on Record with the Bergen County Clerk's Office*

| # | Document Date | Recording Date | Recording Number | Assignor | Assignee |
|---|---|---|---|---|---|
| 4. | 08/21/2017 | 09/14/2017 | 17-068658 | Wilmington Trust Company, as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-35 | Nationstar Mortgage LLC |
| 6. | 03/05/2020 | 03/10/2020 | 2020029033 | Wilmington Trust Company, as Successor Trustee to CitiBank, N.A. as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-35, by Nationstar Mortgage LLC d/b/a Mr. Cooper, its Attorney-in-Fact | U.S. Bank National Association, not in its individual capacity, but solely as Trustee of the NRZ Pass-Through Trust VIII |
| 12. | 12/20/2022 | 03/21/2023 | 2023020105 | U.S. Bank, National Association, not in its individual capacity but solely as Trustee for NRZ Pass-Through Trust VIII | MTGLQ Investors, L.P. |
| 14. | 02/15/2023 | 03/21/2023 | 2023020107 | MTGLQ Investors, L.P. | Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust VI-A |

53.    Accordingly, on June 6, 2024, when FRIEDMAN—purporting to represent NATIONSTAR—filed a request for a Pluries Writ of Execution, it knew, or should have known, that NATIONSTAR's roles as Master Servicer and Servicer of Plaintiff's Mortgage Loan Account

had been terminated ***three years earlier*** on May 5, 2021, when Selene Finance acquired the servicing rights on behalf of MTGLQ Investors, L.P. From this date forward, Nationstar no longer held any legal interest in or authority over Plaintiff's Mortgage Loan Account.

54.     Consequently, on June 6, 2024, when David Krish, Esq. of Friedman Vartolo LLP applied to the Superior Court for the Pluries Writ of Execution in NATIONSTAR's name, he had no valid authority to do so because NATIONSTAR had been out of the picture for over three (3) years.

55.     In support of his application for a Pluries Writ of Execution, Mr. Krish submitted a Certification under penalty of perjury and proffered three (3) assignments of mortgage—the last of which dated August 21, 2017, purports to transfer Plaintiff's Mortgage (*but not the Note*) to Nationstar Mortgage LLC.

56.     In an act of selection bias to achieve a desired result, Mr. Krish submitted only 3 of the 12 assignments on file with the Bergen County Clerk's Office and intentionally omitted 9 adverse assignments that ultimately extinguished NATIONSTAR's involvement with Plaintiff's Note, Mortgage, Mortgage Loan Account, Final Judgment of Foreclosure, and Property as of May 5, 2021.

57.     Mr. Krish had to cherry pick the assignments that supported his application, which also proves that he intentionally weeded out those that undermined the chances of his success. This deliberate omission misled the Court into believing Nationstar retained enforceable rights, when in fact those rights had long since transferred to other entities

58.     Because NATIONSTAR never owned Plaintiff's Mortgage Loan, and no longer had any right, title, interest, or involvement in servicing the Mortgage Loan, NATIONSTAR

lacked standing and, therefore, the Court should have denied FRIEDMAN's application for the Pluries Writ of Execution.

59.     The verifiable facts set forth herein prove that Nationstar Mortgage LLC d/b/a Mr. Cooper was without standing to seek the Alias Writ of Execution granted by the Superior Court on April 6, 2022, and the Pluries Writ of Execution issued on June 11, 2024.

60.     On June 6, 2024, in support of said Pluries Writ of Execution, David Krisch, Esq. an attorney at FRIEDMAN filed a Certification In Support of Issuance of Pluries Writ of Execution. *See*, Exhibit B.

61.     Based on the certification of Mr. Krisch, a sheriff sale was scheduled for August 23, 2024.

62.     In order to adjourn the sheriff sale Plaintiff paid a fee of $28.00 to the Office of the Sheriff – Bergen County.  *See*, Exhibit C.

63.     The stated purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

64.     As described herein, Defendants engaged in abusive debt collection practices against the Plaintiff, which deprived her of the right to enjoy the benefits provided by the FDCPA.

65.     NATIONSTAR knew or should have known that its actions violated the FDCPA.

66.     FRIEDMAN knew or should have known that its actions violated the FDCPA.

67.     Defendants' action cause Plaintiff to suffer emotional distress, anxiety, and depression as well as physical harms of insomnia and elevated blood pressure.

68.    Defendants could have taken the steps necessary to bring their actions within compliance with the FDCPA but neglected to do so and failed to adequately review their actions to ensure compliance with the law.

## POLICIES AND PRACTICES COMPLAINED OF

69.    It is Defendants' policy and practice to collect or attempt to collect debts, which violate the FDCPA, by *inter alia*:

   (a)    Using false, deceptive or misleading representations or means in connection with the collection of a debt; and

   (b)    Making a false representation of the character or amount of the debt;

   (c)    Threatening to take any action that cannot legally be taken; and

70.    Defendants have made collection attempts against at least 40 natural persons in the state of New Jersey within one year of this Complaint on behalf of NATIONSTAR and/or FRIEDMAN.

## COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT,
### 15 U.S.C. § 1692e(2)(A)

*15 U.S.C. §1692e(2)(A) prohibits a debt collector from falsely representing the character, amount, or legal status of any debt.*

71.    Plaintiff, on behalf of herself and others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

72.    Collection communications, such as those of Defendants, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

73.    15 U.S.C. §1692e(2)(A) prohibits a debtor collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt including…. The false representation of the character, amount, or legal status of any debt.

74.     Defendants falsely represented the character and legal status of the Plaintiff's mortgage when NATIONSTAR and FRIEDMAN filed a request for a PLURIES WRIT OF EXECUTION in order to sell Plaintiff's residence at a sheriff's sale and strip Plaintiff of approximately $500,000 in home equity.

75.     More specifically, David Krisch, Esq., of FRIEDMAN submitted a certification in support of his request for the PLURIES WRIT OF EXECUTION, in which he knowingly and intentionally concealed material facts and omitted documentary evidence of which the Court could take judicial notice, thereby interfering with the Court's ability to impartially render a fair and just decision, and depriving Plaintiff equal protection under the law.

76.     At the time FRIEDMAN attempted to obtain the PLURIES WRIT OF EXECUTION, it knew that NATIONSTAR no longer had any agency relationship with the current owner of the debt and was unable to assign the Judgment of Foreclosure, Writ of Execution granted by the Superior Court to NATIONSTAR on June 22, 2018, and the renewed Alias Writ of Execution granted to NATIONSTAR on July 23, 2021.

77.     If FRIEDMAN truly represented NATIONSTAR as their lawful attorney, NATIONSTAR would have cooperated by assigning its Judgment of Foreclosure to the mortgagee of record, Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust VI-A, *who was also represented by FRIEDMAN*. The implication here is that FRIEDMAN did not then and does not now represent NATIONSTAR and resorted to deception to induce the Superior Court to issue the Pluries Writ of Execution on June 11, 2024.

78.     By omitting assignments of mortgage that evidenced the transfer of servicing and ownership rights to other entities, Defendants falsely portrayed Nationstar as a creditor in interest, which it was not.

79.    Defendants violated 15 U.S.C. §1692e(2)(A) by falsely representing that the character and legal status of the debt was such that NATIONSTAR still has the right to foreclose.

80.    Defendants violation of 15 U.S.C. §1692e(2)(A) is material as it leaves Plaintiff unsure of how to respond.

## COUNT II

### FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692e(5)

*15 U.S.C. §1692e(5) prohibits threats to take any action that cannot legally be taken.*

81.    Plaintiff, on behalf of herself and others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

82.    Pursuant to 15 U.S.C. §1692e(5) as debtor collect is prohibited from threating to take any action that cannot legally be taken or not intended to be taken.

83.    Defendants violated 15 U.S.C. §1692e(5) by threating to complete the foreclosure process by taking Plaintiff's residence to a sheriff's sale regardless of the fact that NATIONSTAR had no interest in the debt, no servicing rights, and no authority to act on behalf of the current owner of the obligation.

84.    No legal mechanism existed under which Nationstar could lawfully enforce the judgment at the time of the filing. The threat to do so constituted an act of intimidation under color of authority Nationstar no longer held.

85.    Because NATIONSTAR could not have the legally taken the action to liquidate Plaintiff's property, Defendants violated 15 U.S.C. §1692e(5).

86.    Defendants violation of 15 U.S.C. §1692e(5) is material as it leaves Plaintiff unsure of how to respond.

## COUNT III

### FAIR DEBT COLLECTION PRACTICES ACT,
### 15 U.S.C. § 1692e(10)

*15 U.S.C. §1692e(10) prohibits any use of false representation or deceptive means to collect a debt.*

87.      Plaintiff, on behalf of herself and others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

88.      Pursuant to 15 U.S.C. §1692e(10) a debt collector may not use any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

89.      Defendants violated 15 U.S.C. §1692e(10) by falsely representing that NATIONSTAR was the owner of the mortgage on June 6, 2024, when in fact MTGLQ Investors, L.P. extinguished NATIONSTAR's involvement with Plaintiff's Note, Mortgage, Mortgage Loan Account, Final Judgment of Foreclosure, and Property three (3) years earlier on May 5, 2021.

90.      Defendants further violated 15 U.S.C. §1692e(10) when David Krisch, Esq., of FRIEDMAN submitted a certification in support of his request for the PLURIES WRIT OF EXECUTION, in which he knowingly failed to inform the court that NATIONSTAR no longer had any right, title, or interest in the debt as of May 5, 2021.

91.      The deceptive presentation of only favorable assignments, while deliberately omitting assignments adverse to NATIONSTAR's authority, was intended to mislead the Court and the consumer, and constitutes a classic example of FDCPA-prohibited conduct.

92.      Defendants' violation of 15 U.S.C. §1692e(10) is material as it leaves Plaintiff unsure of how to respond.

93.      Congress enacted the FDCPA in part to eliminate abusive debt collection practices by debt collectors.

94.    Plaintiff and others similarly situated have a right to be free from abusive debt collection practices by debt collectors.

95.    Plaintiff and others similarly situated were sent communications, which could have affected their decision-making with regard to the debt.

96.    Plaintiff and others similarly situated have suffered harm as a direct result of the abusive, deceptive and unfair collection practices described herein.

97.    Plaintiff has suffered damages and other harm as a direct result of Defendants actions, conduct, omissions and violations of the FDCPA described herein.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

(a)    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative and his attorneys as Class Counsel;

(b)    Awarding Plaintiff and the Class statutory damages;

(c)    Awarding Plaintiff and the Class actual damages, including but not limited to a disgorgement of all money collected during the relevant period;

(d)    Awarding pre-judgment interest;

(e)    Awarding post-judgment interest.

(f)    Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses; and

(g)    Awarding Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## CERTIFICATION  PURSUANT TO LOCAL RULE 11.2

I, hereby certify that the matter in controversy is not the subject matter of any other court, arbitration or administrative proceeding, other than one pending in the Superior Court of New Jersey, Bergen County, Chancery Division, Docket No.: F-002238-15.

Dated: April 17, 2025

*s/ Joseph K. Jones*
Joseph K. Jones, Esq.
JONES, WOLF & KAPASI, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile
jkj@legaljones.com
*Attorneys for Plaintiff*

# Exhibit

# A

KOSTOPOULOS v. NATIONSTAR MORTGAGE, LLC, et al

MTGLQ Investors, LP
Bowling Green Station
PO Box 1110
New York, NY 10274

Temp-Return Service Requested

000113-000001-000002-0000226 2048034 4595LT01_1
ATHENA KOSTOPOULOS
C/O BRACH EICHLER LLC
101 EISENHOWER PKWY
ROSELAND, NJ 07068-1032

PRESORTED
FIRST-CLASS MAIL
US POSTAGE
PAID
VENTANEX



MTA LIRR In-Town Station
Bowling Green Station
PO Box 1110
New York, NY 10274

Temp-Return Service Requested

000113-000001-000002-000226 2048034 4595LT01_1
ATHENA KOSTOPOULOS
C/O BRACH EICHLER LLC
101 EISENHOWER PKWY
ROSELAND, NJ  07068-1032



**MTGLQ**

04/26/2021

ATHENA KOSTOPOULOS
C/O BRACH EICHLER LLC
101 Eisenhower Parkway
Roseland, NJ 07068

Re:    Account Number:    2001224142
      Mortgagor(s):    ATHENA KOSTOPOULOS
      Property:    155 SUMMIT DR
          PARAMUS, NJ 07652

### NOTIFICATION OF ASSIGNMENT, SALE OR TRANSFER OF YOUR MORTGAGE LOAN

The ownership of your mortgage loan has been acquired by MTGLQ. This transfer was effective 03/30/2021.

The assignment, sale or transfer of the mortgage loan does not affect any term or condition of the Mortgage, Deed of Trust, Note or any subsequent modification of your original loan terms. The transfer of ownership of your mortgage loan to MTGLQ has not been publicly recorded.

Nationstar Mortgage LLC d/b/a Mr. Cooper is the servicer of your loan until 05/05/2021. **After this date, your new loan servicer will be Selene Finance LP.** You may contact Selene Finance LP by calling (877) 768-3759 or written correspondence should be sent to Selene Finance LP, Attention Customer Service Department, P. O. Box 421517, Houston, TX 77242-4239. We also encourage you to visit Selene's website at www.selenefinance.com for additional helpful information.

**MTGLQ does not service your loan.** It is important that your monthly payments be sent directly to your servicer and NOT to **MTGLQ.** All correspondence and inquiries concerning your mortgage loan should be addressed to your servicer. The servicer has authority to act on our behalf with regard to the administration of your mortgage loan and respond to any questions about your mortgage loan.

In the unlikely event you find it necessary to contact **MTGLQ,** you may write us at the address listed below or you may telephone us at 866-707-8234.

MTGLQ
2001 Ross Ave, Suite 2800
Dallas, TX 75201

**Please send all payments to your appropriate servicer. Payments received by MTGLQ may be returned OR forwarded to the appropriate servicer and this may result in late charges and your account becoming past due. MTGLQ is not responsible for late charges or other consequences of misdirected payments.**

**Partial Payment Policy -** Your lender may hold partial payments in a separate account until you pay the remainder of the payment, and then apply the full payment to your loan. If this loan is sold, your new lender may have a different policy.

Please note that if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally.

# Exhibit

# B

KOSTOPOULOS v. NATIONSTAR MORTGAGE, LLC, et al

**David Krisch**
Attorney Id Number: 015912012
**FRIEDMAN VARTOLO LLP**
A Limited Liability Partnership formed in the State of New York
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150
Attorneys for Plaintiff
Firm Case No.: 203173-1

-----------------------------------------------------------------x

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER,<br><br>Plaintiff<br><br>vs.<br><br>ATHENA KOSTOPOULOS; THOMAS KOSTOPOULOS; PALISADES COLLECTION LLC; STATE OF NEW JERSEY; WESTLAND GARDEN STATE PLAZA,<br><br><br><br>Defendant(s) | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION BERGEN COUNTY DOCKET NO.: F- 002238-15<br><br>CIVIL ACTION<br><br>**CERTIFICATION IN SUPPORT OF ISSUANCE OF PLURIES WRIT OF EXECUTION** |

-----------------------------------------------------------------x

David Krisch, of full age, hereby certifies as follows:

1.      I am an attorney-at-law of the State of New Jersey and associated with the law firm of Friedman Vartolo LLP, attorneys for Plaintiff in the above-entitled action. In this capacity, I have full knowledge of the facts set forth herein.

2.      I make this Certification in support of the issuance of an Alias Writ of Execution so that the Sheriff of Bergen County may be permitted to schedule the sale of the mortgage premises known as 155 Summit Drive, Paramus, NJ 07652.

3.      On June 22, 2018 Final Judgment was entered in the instant matter with Nationstar Mortgage LLC D/B/A Mr. Cooper listed as Plaintiff. This matter failed to go to sale within 24 months of the final judgment date.

4.      The Mortgage dated September 16, 2003, was executed by Athena Kostopoulos & Thomas Kostopoulos, to Mortgage Electronic Registration Systems, Inc., as Nominee for Lehman Brothers Bank, FSB, a Federal Savings Bank. The Mortgage was recorded in the County Clerk's Office of Bergen, on October 10, 2003, in Book 12990 of Mortgages for said County on Pages 255 et seq. A copy of the Mortgage is attached hereto as **Exhibit A.**

5.      Thereafter, in an assignment dated December 21, 2010, Mortgage Electronic Registration Systems, Inc. as nominee for Lehman Brothers Bank FSB assigned the mortgage to Citimortgage, which assignment was recorded in the County Clerk's Office of Bergen County on January 10, 2011, in Book 0633 on Page 0441 et seq. Thereafter, in an assignment dated February 28, 2014, Citimortgage Inc. assigned the mortgage to Wilmington Trust Company as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-35, which assignment was recorded in the County Clerk's Office of Bergen County on March 14, 2014, in Book 1634 on Page 1902 et seq. Thereafter, in an assignment dated August 21, 2017, Wilmington Trust Company as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-35 assigned the mortgage to Nationstar Mortgage LLC, which assignment was recorded in the County Clerk's Office of Bergen County on September 14, 2017, in Book 2721 on Page 1376 et seq. Copies of the Assignments of mortgage are attached hereto collectively as **Exhibit B.**

6.      On June 22, 2018 Final Judgment and a Writ of Execution was entered in the instant action.

7.      This matter failed to go to sale within 24 months of the final judgment date.

8.      On April 6, 2022, an Alias Writ was entered by the Honorable Edward A. Jerejian, P.J.Ch.

9.      This matter failed to go to sale within 24 months of the Alias Writ.

10.     I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: June 3, 2024

                            **FRIEDMAN VARTOLO LLP**
                            A Limited Liability Partnership formed in the State of
                            New York
                            Attorneys for Plaintiff

                            <u>S/David Krisch</u>
                            David Krisch, Esq.

# Exhibit A



Return To:   AURORA LOAN SERVICES INC.
601 5TH AVENUE, P.O. BOX 4000
SCOTTSBLUFF, NE 69363

206963.01   Mortgage
Kathleen A. Donovan   Recording Fee 190.00
Bergen County Clerk
Recorded 10/10/2003 15:30

Prepared By:   RICHARD THORNTON
AURORA LOAN SERVICES
400 PROFESSIONAL DRIVE, SUITE 100
GAITHERSBURG, MD 20879

ESCROW
LOAN #

—————— [Space Above This Line For Recording Data] ——————

## MORTGAGE   MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated   September 16, 2003
together with all Riders to this document.
(B) "Borrower" is
ATHENA KOSTOPOULOS   and Thomas Kostopoulos, w/h

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

-6A(NJ) (0005)   Form 3031 1/01
Page 1 of 15   Initials: A.K. TK
VMP MORTGAGE FORMS - (800)521-7291

OVER

B12990P.255



(D) "Lender" is    LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK

Lender is a    Corporation
organized and existing under the laws of    UNITED STATES OF AMERICA
Lender's address is    400 PROFESSIONAL DRIVE, SUITE 100, GAITHERSBURG, MD 20879

(E) "Note" means the promissory note signed by Borrower and dated    September 16, 2003
The Note states that Borrower owes Lender
    FIVE HUNDRED SIXTY FOUR THOUSAND & 00/100                                    Dollars
(U.S. $    564,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    October 1, 2033
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider     ☒ Other(s) [specify]
                                                            PREPAY/

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

-6A(NJ) (0005)                        Page 2 of 15          Initials: AK Tk          Form 3031 1/01

B12990P256



(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

County                          of          Bergen
   [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
All that tract or parcel of land as shown on Schedule "A" attached
hereto which is incorporated herein and made a part hereof.

Property Account Number:                              which currently has the address of
155 SUMMIT DRIVE                                                              [Street]
PARAMUS                            [City], New Jersey   07652   [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: A.K. TK

-6A(NJ) (0005)          Page 3 of 15                              Form 3031 1/01

**SCHEDULE C – Land Description**

Commitment No.: MS-46125

All that certain lot, parcel or tract of land, situate and lying in the Borough of Paramus, County of Bergen and State of New Jersey being more particularly described as follows:

BEING known and designated as Lot 44 in Block 2203-B on Map entitled "Section One, Map of Arcola Hills, siutate in the Borough of Paramus, Bergen County, N.J., Scale 1"- 60', dated June 5, 1957, Sheet 2 of 2, Robert N. Dentz, P.E. and L.S., License No. 6506, Woodcliff Lake, New Jersey," and filed in the Bergen County Clerk's Office on July 22, 1957 as Map No. 5160.

BEGINNING at a point in the northerly line of Summit Drive, distant westerly along same 403.17 feet from the produced intersection of the northerly line of Summit Drive and the southwesterly line of Alpine Drive from thence running

1)  Along said line of Summit Drive in a westerly direction along a curve to the left having a radius of 198.30 feet a distance of 179.90 feet to a point; thence
2)  Still along said line of Summit Drive, South 42 degrees 27 minutes 26 seconds West 31.40 feet to a point; thence
3)  Still along Summit Drive in a northwesterly direction along a curve to the right having a radius of 25.00 feet a distance of 24.62 feet to a point; thence
4)  North 59 degrees 24 minutes 16 seconds West 247.08 feet to a point; thence
5)  North 72 degrees 40 minutes 59 seconds East 281.10 feet to a point; thence
6)  South 52 degrees 31 minutes 35 seconds East 188.35 feet to the point and place of beginning.

The above description is drawn in accordance with a survey made by G.B. Associates, Inc., dated 06/04/97.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 2 in Block 1702 on the Borough of Paramus Tax Map.

FOR INFORMATIONAL PURPOSES ONLY: BEING COMMONLY KNOWN AS 155 Summit Drive, Paramus, NJ 07652

B12990P258

**STEWART TITLE**
GUARANTY COMPANY

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any
prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items
pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.
currency. However, if any check or other instrument received by Lender as payment under the Note or this
Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments
due under the Note and this Security Instrument be made in one or more of the following forms, as selected
by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check,
provided any such check is drawn upon an institution whose deposits are insured by a federal agency,
instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at
such other location as may be designated by Lender in accordance with the notice provisions in Section 15.
Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring
the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current,
without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in
the future. If Lender accepts such payments, it shall apply such payments at the time such payments are
accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve
Borrower from making payments due under the Note and this Security Instrument or performing the
covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments
accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the
Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to
each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to
late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal
balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the
late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from
Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in
full. To the extent that any excess exists after the payment is applied to the full payment of one or more
Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be
applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the
Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under
the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a)
taxes and assessments and other items which can attain priority over this Security Instrument as a lien or
encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums
for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any,
or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in
accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any
time during the term of the Loan, Lender may require that Community Association Dues, Fees, and
Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.
Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower
shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds
for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all
Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower
shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment

Initials: A.K. T.K

-6A(NJ) (0005)                    Page 4 of 15                    Form 3031 1/01

of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

-6A(NJ) (0005)                Page 6 of 15          Initials: A.K. T.K.          Form 3031 1/01

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(NJ) (0005)                Page 7 of 15                Initials: A.K. TK                Form 3031 1/01

B12990P262

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

-6A(NJ) (0005)          Page 6 of 18          Initials: A.K. T.L          Form 3021 1/01

B1299OP263

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

@ -6A(NJ) (0005)    Page 8 of 15    Initials: A.K. TK    Form 3031 1/01

B12990P264



Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Initials: A.K. TK

-6A(NJ) (0005)     Page 10 of 15     Form 3031 1/01

B I 2 9 9 0 P 2 6 5



**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys'

-6A(NJ) (0000)                    Page 11 of 15                    Initials: A.K. Tk          Form 3031 1/01



fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

B12990P267

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Section 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

Initials: A.K. TK

-6A(NJ) (0005)    Page 13 of 15    Form 3031 1/01

8 1 2 9 9 0 P 2 6 8

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
                                           ATHENA KOSTOPOULOS           -Borrower

_____          _____ (Seal)
                                           Thomas Kostopoulos          -Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower                                 -Borrower

-6A(NJ) (0005)                Page 14 of 15                Form 3031 1/01

BI2990P269



**STATE OF NEW JERSEY,**                     Bergen   County ss:

On this      16th      day of  September, 2003       , before me, the subscriber,
personally appeared  Athena Kostopoulos and Thomas Kostopoulos

who, I am satisfied,
. is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that
he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein
expressed.

Notary Public

Lauren A. Ramp
Attorney at Law
State of New Jersey

-6A(NJ) (0005)                      Page 15 of 15 .            Initials: A.K. T.K.        Form 3031 1/01

B12990P270

09/18/2003 10:42 F█████            Sekas & Buzzerri                    ☒002

08-18-03    09:45    From-Leiman Brothers Bank            361 660 2050        T-653  P.002/002  F-750

## PREPAYMENT RIDER
*(Multi-state)*

    This Prepayment Rider is made this ___16 day of ___September___, 2003 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to ___LEHMAN BROTHERS BANK, FSB___ (the "Lender") of the same date and covering the property described in the Security Instrument and located at ___155 SUMMIT DRIVE PARAMUS, NEW JERSEY 07652___ (the "Property").

    **Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

    Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment."

    If, within the ___5___-year period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.

    Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first ___0___ year(s) of the term of the Note, no prepayment penalty will be assessed. In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

    By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_Athena Kostopoulos_ _____ (Seal)        _____ (Seal)
Borrower  ATHENA KOSTOPOULOS                   Borrower

_Kostopoulos_ _____ (Seal)                 _____ (Seal)
Borrower                                        Borrower

B12990P271

# Exhibit B

11-003504    Assignment of Mortgage
V  Bk: 00633  Pg: 0441-0442Rec. Fee $53.00
Elizabeth Randall, Bergen County Clerk
Recorded 01/10/2011  02:32:37 PM

Record and Return to:

FEIN, SUCH, KAHN & SHEPARD, PC.
7 Century Drive - Suite 201
Parsippany, New Jersey 07054
(973) 538-9300
Our File No. CC4514

## ASSIGNMENT OF MORTGAGE

CC4514

**KNOW ALL MEN BY THESE PRESENTS:**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, F.S.B., A FEDERAL SAVINGS BANK herein designated as the Assignor, for and in consideration of the sum of ONE and 00/100 ($1.00) DOLLAR and other good and valuable consideration, the receipt whereof is hereby acknowledged, does by these presents assign to CITIMORTGAGE residing or located at 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63304, herein designated as the Assignee, a certain Mortgage dated September 16, 2003, made by ATHENA KOSTOPOULOS and THOMAS KOSTOPOULOS on lands located in the BOROUGH of PARAMUS in the County of BERGEN and State of New Jersey, to secure payment of the sum of $564,000.00 which mortgage is recorded or registered in the Clerk/Register's Office of the County of BERGEN, recorded on October 10, 2003 in Book 12990 of Mortgages on Page 255.

TOGETHER with the Bond, Note or other Obligation therein described, and the money due and to grow due thereon, with the interest. **TO HAVE AND TO HOLD** the same unto the said Assignee forever, subject only to all the provisions contained the said Mortgage and the Bond, Note or other Obligation.

AND the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense, to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.

In all references herein to any parties, persons, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

**IN WITNESS WHEREOF,** the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed this _____ day of _____ DEC 21 2010 _____, 20___ .

Signed, Sealed and Delivered
in the presence of or
attested by

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, F.S.B., A FEDERAL SAVINGS BANK

SIGNER 1

SIGNER 2

(Signature w/ seal)

(Signature)

Aaron Menne, VICE PRESIDENT

Kim Krakowiak, VICE PRESIDENT

**NJ ALL-PURPOSE
CERTIFICATE OF ACKNOWLEDGMENT**

State of    MISSOURI            :

County of    ST. CHARLES        :

On this _____ day of ___DEC 2 1 2010___, _____ before the undersigned notary appeared

Aaron Menne and  Kim Krakoviak proved to me on the basis of satisfactory evidence to be the person(s) whose names(s) is are subscribed to the

within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their

signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury that the foregoing paragraph is true and correct.

Sworn to and subscribed before me this _____ day of ___DEC 2 1 2010___, 20___.

SIGNATURE OF NOTARY: _____

PRINTED NAME: _____

**\*\* SIGNATURE OF SIGNERS REQUIRED BELOW FOR RECORDING.**

**CAPACITY(IES) CLAIMED BY SIGNER:**

Signatures:    (1) _____    (2) _____

Titles:    (1)___VICE PRESIDENT_____    (2)___VICE PRESIDENT_____

Signer is
representing:    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS

BANK, F.S.B., A FEDERAL SAVINGS BANK

14-016203   Assignment of Mortgage
V  BK: 01634  Pg: 1902-1904Rec. Fee $63.00
John S. Hogan, Bergen County Clerk
Recorded 03/14/2014  09:46:11 AM

Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE , CA 91209-9071

This instrument prepared by:
CITIMORTGAGE, INC
 CHARLIE THOMAS
1000 TECHNOLOGY DRIVE, MS 321
 O'FALLON, MO
 63368-2240



## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, CitiMortgage, Inc. , the undersigned, as beneficiary or successor thereto, whose address is 1000 Technology Drive, O'Fallon, MO, 63368 , hereinafter "Assignor" ,  hereby grants, conveys, assigns and transfers unto WILMINGTON TRUST COMPANY AS TRUSTEE FOR THE STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-35 , hereinafter, "Assignee" ,  whose address is c/o CitiMortgage, Inc., 1000 Technology Drive, O'Fallon, MO, 63368 , all beneficial interest under that certain Mortgage dated 09/16/2003 .  Said Mortgage is recorded in the State of New Jersey, County of Bergen County .

Mortgage Recorded: 10/10/2003
Original Mortgage Company: Mortgage Electronic Registration Systems, Inc. as nominee for Lehman Brothers Bank, FSB its successors and assigns
Original Mortgagors: Athena Kostopoulos and Thomas Kostopoulos
Original Loan Amount: $564,000.00
Recorded as: Book: 12990 Page: 255 Instrument No: NA
Property Address: 155 Summit Drive, Paramus, NJ, 07652
Description/Additional Information: See Exhibit A

The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignee.  This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold.

TO HAVE AND TO HOLD the same unto the said Assignee, its successor and assigns, forever subject only to all the provisions contained in the said Mortgage and the Bond, Note or other Obligation, as defined in the Mortgage.  And the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.

I AGREE TO THE TERMS OF THIS ASSIGNMENT.

Date: 2-28-14
CitiMortgage, Inc.
(the Assignor)
By: Charlie Thomas
Name: Charlie Thomas
Title: Document Control Officer

STATE OF **MISSOURI, ST. CHARLES COUNTY**

On _2-28-14_____ before me, the undersigned, a notary public in and for said state, personally appeared **Charlie Thomas**, **Document Control Officer** of **CitiMortgage, Inc.** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Laura M. Jones
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Charles County
My Commission Expires: March 19, 2016
Commission Number: 12316868

Notary Public Laura M. Jones

Commission Expires: 03/19/2016

## Exhibit A

All that certain lot, parcel or tract of land, situate and lying in the Borough of Paramus, County of Bergen and State of New Jersey being more particularly described as follows:

BEING known and designated as Lot 44 in Block 2203-B on Map entitled "Section One, Map of Arcola Hills, siutate in the Borough of Paramus, Bergen County, N.J., Scale 1"- 60', dated June 5, 1957, Sheet 2 of 2, Robert N. Dentz, P.E. and L.S., License No. 6506, Woodcliff Lake, New Jersey," and filed in the Bergen County Clerk's Office on July 22, 1957 as Map No. 5180.

BEGINNING at a point in the northerly line of Summit Drive, distant westerly along same 403.17 feet from the produced intersection of the northerly line of Summit Drive and the southwesterly line of Alpine Drive from thence running

1) Along said line of Summit Drive in a westerly direction along a curve to the left having a radius of 198.30 feet a distance of 179.90 feet to a point; thence
2) Still along said line of Summit Drive, South 42 degrees 27 minutes 26 seconds West 31.40 feet to a point; thence
3) Still along Summit Drive in a northwesterly direction along a curve to the right having a radius of 25.00 feet a distance of 24.62 feet to a point; thence
4) North 59 degrees 24 minutes 16 seconds West 247.08 feet to a point; thence
5) North 72 degrees 40 minutes 59 seconds East 281.10 feet to a point; thence
6) South 52 degrees 31 minutes 35 seconds East 188.35 feet to the point and place of beginning.

The above description is drawn in accordance with a survey made by G.B. Associates, Inc., dated 06/04/97.

FOR INFORMATIONAL PURPOSES ONLY:  Also known as Lot 2 in Block 1702  on the Borough of Paramus Tax Map.

FOR INFORMATIONAL PURPOSES ONLY:  BEING COMMONLY KNOWN AS 155 Summit Drive, Paramus, NJ 07652

John S. Hogan
Bergen County Clerk

**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



**INSTRUMENT # 17-068658**

**V 02721 1376**

**RECORDED DATE:** 09/14/2017 08:25:39 AM

| | |
|---|---|
| **Document Type:** Assignment of Mortgage | **Transaction #:** 8351278 |
| | **Document Page Count:** 2 |
| | **Operator Id:** CLERK |

**RETURN TO:**
PHELAN HALLINAN DIAMOND & JONES PC
400 FELLOWSHIP ROAD
SUITE 100
MT LAUREL  NJ  08054

**SUBMITTED BY:**

| **PRIMARY NAME** | **SECONDARY NAME** |
|---|---|
| WILMINGTON TRUST COMPANY | NATIONSTAR MORTGAGE LLC |
| **ADDITIONAL PRIMARY NAMES** | **ADDITIONAL SECONDARY NAMES** |
| STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS THROUGH CERTIFICATES SERIES 2003 35 NATIONSTAR MORTGAGE LLC | |

**MARGINAL REFERENCES:**    MTGE BK 12990 PG 0255

**DOCUMENT DATE:** 08/21/2017

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Assignment of Mortgage | $40.00 |
| Additional Pages Fee | $10.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| **Total:** | $53.00 |

**INSTRUMENT #:** 17-068658
**Recorded Date:** 09/14/2017 08:25:39 AM

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.

*John S. Hogan*

**John S. Hogan**
**Bergen County Clerk**

**Recording Fees:** $53.00
**Realty Transfer Tax Fees:** $0.00

## OFFICIAL RECORDING COVER PAGE

Page 1 of 3

# PLEASE DO NOT DETACH

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

21-2P.53

| | |
|---|---|
| **Bergen County Recording Data Page**<br>**Honorable John S. Hogan**<br>**Bergen County Clerk** | Official Use Only - Records<br><br>Assignment of Mortgage<br>V Bk: 02721 Pg: 1376-1378   Rec. Fee $53.00<br>John S. Hogan, Bergen County Clerk<br>Recorded 09/14/2017   08:25:39 AM |
| *Official Use Only - Realty Transfer Fee* | |

| Date of Document:<br><br>08/21/2017 | Type of Document:<br><br>Assignment of Mortgage |
|---|---|
| First Party Name:<br>WILMINGTON TRUST COMPANY AS TRUSTEE FOR THE<br>STRUCTURED ASSET SECURITIES CORPORATION<br>MORTGAGE PASS-THROUGH CERTIFICATES, SERIES<br>2003-35 | Second Party Name:<br>NATIONSTAR MORTGAGE LLC |
| Additional Parties: | |

| THE FOLLOWING SECTION IS REQUIRED FOR DEEDS ONLY | |
|---|---|
| Block: | Lot: |
| Municipality: | |
| Consideration: | |
| Mailing Address of Grantee: | |

| THE FOLLOWING SECTION IS FOR ORIGINAL MORTGAGE BOOKING & PAGE INFORMATION FOR<br>ASSIGNMENTS, RELEASES, SATISFACTIONS, DISCHARGES & OTHER ORIGINAL MORTGAGE AGREEMENTS ONLY | |
|---|---|
| Original Book:<br>12990 | Original Page:<br>255 |

**BERGEN COUNTY RECORDING DATA PAGE**
Please do not detach this page from the original document as it
contains important recording information and is part of the permanent record.

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

**RECORD & RETURN**
**PHELAN HALLINAN DIAMOND & JONES**
**400 FELLOWSHIP ROAD, SUITE 100**
**Mt. Laurel, NJ 08054**

### CORPORATE ASSIGNMENT OF MORTGAGE

Bergen, New Jersey
SELLER'S SERVICING #: ██████ "KOSTOPOULOS"

Date of Assignment: August 21st, 2017
Assignor: WILMINGTON TRUST COMPANY AS TRUSTEE FOR THE STRUCTURED ASSET SECURITIES
CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-35 BY NATIONSTAR MORTGAGE
LLC, ITS ATTORNEY IN FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019

Executed By: ATHENA KOSTOPOULOS AND THOMAS KOSTOPOULOS  To: LEHMAN BROTHERS BANK, FSB, A
FEDERAL SAVINGS BANK
Date of Mortgage:  09/16/2003 Recorded:  10/10/2003  in Book/Reel/Liber: 12990 Page/Folio: 255  In the County of
Bergen, State of New Jersey.

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $564,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

WILMINGTON TRUST COMPANY AS TRUSTEE FOR THE STRUCTURED ASSET SECURITIES CORPORATION
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-35 BY NATIONSTAR MORTGAGE LLC, ITS
ATTORNEY IN FACT
On August 21st, 2017

By: _____
TIM JACKSON, Assistant Secretary

STATE OF Texas
COUNTY OF Dallas

On August 21st, 2017, before me, MOHAMED S. HAMEED, a Notary Public in and for Dallas in the State of Texas,
personally appeared TIM JACKSON, Assistant Secretary of WILMINGTON TRUST COMPANY AS TRUSTEE FOR
THE SASCO  SERIES 2003-35 , personally known to me (or proved to me on the basis of satisfactory evidence) to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
MOHAMED S. HAMEED
Notary Expires: 03/14/2020  #11340097

┌─────────────────────────────┐
│ MOHAMED S. HAMEED           │
│ Notary Public, State of Texas│
│ Comm. Expires 03-14-2020    │
│ Notary ID 11340097          │
└─────────────────────────────┘

(This area for notarial seal)

# Exhibit

# C

KOSTOPOULOS v. NATIONSTAR MORTGAGE, LLC, et al

# OFFICE OF THE SHERIFF

COUNTY OF BERGEN

PHONE: 201-336-3500
FAX:    201-752-4234

**FRIEDMAN VARTOLO LLP**
1325 FRANKLIN AVENUE
SUITE 160
GARDEN CITY, NY 11530

Re:  NATIONSTAR MORTGAGE LLC DBA MR COOPER

    -v-

ATHENA KOSTOPOULOS; THOMAS KOSTOPOULOS

DOCKET # F00223815, SHERIFF'S # 24002082

August 21, 2024

Dear Sir or Madam:

Please be advised the Sheriff's Office has processed an adjournment in connection with the above-referenced matter

| | |
|---|---|
| **From**: | 8/23/2024 |
| **To**: | 9/27/2024 |
| **Location**: | 2 Bergen County Plaza, Hackensack, New Jersey |
| **Start Time**: | 12:00 P.M. |

**ADJOURNMENT FEES ARE NON-REFUNDABLE**.

Very truly yours,

Anthony Cureton
Sheriff of Bergen County

Printed: 8/21/2024 13:46:08
By: tapettiford

# Bergen Civil Office

---

## Payment Receipt

---

**Payment Made By:**  ATHENA KOSTOPOULOS; THOMAS KOSTOPOULOS

155 SUMMIT DRIVE
PARAMUS NJ 07652

**Payment Date:** 8/21/2024
**Payment Type:** Cash
**Check Number:**
**Receipt Number:** 219876

24002082   NATIONSTAR MORTGAGE LLC DBA MR COOPER
vs.
ATHENA KOSTOPOULOS; THOMAS KOSTOPOULOS

$28.00

**Payment Total**   **$28.00**

Received By:____tapettiford_____